USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/24/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
JESSENIA MALDONADO,  :
   :
                              Plaintiff,  :
   :
       -against-  :    15-CV-2842 (VEC)
   :
THE BOSTANY LAW FIRM, PLLC, and JOHN  :
PETER BOSTANY, Individually,  :
   :
                              Defendants.  :
------------------------------------------------------------------------ X
THE BOSTANY LAW FIRM, PLLC,  :
   :
                              Plaintiff,  :
       -against-  :    15-CV-3400 (VEC)
   :
JESSENIA MALDONADO,  :
   :
                              Defendant.  :
------------------------------------------------------------------------ X

ORDER

VALERIE CAPRONI, United States District Judge:

      These related cases arise out of a "work interview" gone wrong. In the first action, 15-CV-2842, Jessenia Maldonado ("Maldonado"), an attorney who interviewed with, but was not hired by, John Peter Bostany ("Bostany") and The Bostany Law Firm, PLLC ("the Firm"), asserts claims for unpaid wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York State Labor Law, Articles 6 & 19 ("NYLL"), along with claims for sexual harassment, discrimination and retaliation under the New York City Human Rights Law ("NYCHRL") and state tort claims. In the second action, 15-CV-3400, which was originally filed by the Firm in New York State Court and later removed by Maldonado to this Court, the

Firm seeks a declaratory judgment that Maldonado was paid for the work interview and that the Firm is not subject to the NYCHRL.

Now pending before the Court are three motions: Maldonado's motion for the Court to exercise supplemental jurisdiction over her state law claims (the "Jurisdiction Motion"); the Firm's motion for summary judgment on its declaratory judgment claims (the "Summary Judgment Motion"); and Maldonado's motion for attorneys' fees (the "Fees Motion"). For the following reasons, the Jurisdiction Motion is GRANTED IN PART and DENIED IN PART; the Summary Judgment Motion is GRANTED; and the Fees Motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I.   The Work Interview

On or about July 17, 2014, Maldonado went to the Firm for an "initial interview" with Bostany after submitting her resume in response to a job posting. Maldonado Aff. in Support of Def.'s Opp. to Summary Judgment ("Maldonado Aff.") (Dkt. 18) ¶¶ 1-3. At the end of the initial interview, Maldonado claims that Bostany clutched her hand and leaned towards her, invading her personal space and causing her to feel uncomfortable. *Id.* ¶ 4. On or about July 21, 2014, Bostany invited Maldonado to come to the Firm for a paid "work interview," to which Maldonado agreed. *Id.* ¶ 6; Firm 56.1 Stmt. ¶ 2. Specifically, the parties agreed that, on July 22, 2014, Maldonado would work at the Firm from 11:00 a.m. to 5:00 p.m. with a half-hour lunch break and that Maldonado would be paid at a rate of $20.00 per hour. Firm 56.1 Stmt. ¶¶ 2-3; Maldonado Aff. ¶ 7.

On July 22, 2014, Maldonado timely arrived at 11:00 a.m. Firm 56.1 Stmt. ¶ 4; Maldonado Aff. ¶ 9. Upon arrival, Maldonado met with Dennison Marzocco, who oriented her to the office. Maldonado Aff. ¶ 9. Maldonado then met with Bostany, who gave her several

work assignments. *Id.* ¶ 10. At the end of the meeting, Bostany again allegedly clutched Maldonado's hand and stepped into her personal space, making her feel nervous and uncomfortable. *Id.* ¶¶ 11-12. While working on her assignments, Maldonado used an email account and login of a paralegal, Megan Allen. Bostany Declaration in Support of the Firm's Summary Judgment Motion ("Bostany Decl.") Ex. B (Dkt. 12-2); Maldonado Aff. ¶ 28.

 At approximately 1:30 p.m., Maldonado took her lunch break. Firm 56.1 Stmt. ¶ 4; Maldonado Aff. ¶ 14. The Firm alleges that, while she was on her lunch break, Bostany decided not to hire Maldonado because she was not qualified for the job. Firm 56.1 Stmt. ¶ 5. Around the time when Maldonado returned to the office, Bostany told her that he had to leave for an unexpected client meeting but that he would contact her later that evening to reschedule the work interview. Maldonado Aff. ¶ 15; Firm 56.1 St. ¶6; Bostany Decl. Ex. A (Dkt. 12-1). Maldonado alleges that Bostany then approached her from behind, while she was facing a computer, placed his left hand on her shoulder and began to rub her shoulder in a suggestive manner. Maldonado Aff. ¶ 17. In response, Maldonado alleges that she jerked forward, and that, unhappy with this reaction, Bostany gave her a "despondent look" before leaving the office. *Id.* ¶¶ 17-18. The Firm denies Maldonado's description of this interaction, noting that Bostany communicated with Maldonado via email over her lunch break.[1] Firm's Resp. to Maldonado's 56.1 Counterstatement ("Firm 56.1 Reply") ¶¶ 37-39. The parties agree, however, that Maldonado left the Firm at approximately 2:00 p.m. Firm 56.1 Stmt. ¶¶ 7, 8; Maldonado 56.1 Stmt. ¶¶ 4, 7-

---

[1]  As an exhibit to his Declaration in support of the Summary Judgment Motion, Bostany attaches what he avers to be his email to Maldonado, sent at 1:52 p.m. on July 22, 2014, stating: "we are going to have to abbreviate today's interview because I have to run out to an emergent [sic] client meeting . . . ." Bostany Decl. Ex A at 1. While not a dispositive fact issue for the purposes of this Opinion, the Court notes that Bostany's email appears to contradict and therefore undermine Maldonado's Affidavit stating that Bostany relayed this information to her through an in-person "conversation" at the office, rather than via email. *See* Maldonado Aff. ¶¶ 15, 17.

3

8, 36. That evening, Bostany emailed Maldonado, informing her that the interview "didn't work out." Maldonado Aff. ¶ 19; Bostany Decl. Ex A.

Maldonado was not paid when she left the work interview or in the weeks that followed, and she believes that she was not paid, or hired, in retaliation for her rejection of Bostany's alleged advances. *Id.* ¶ 20. Instead of calling the Firm regarding her compensation, Maldonado retained an attorney. *Id.* ¶ 23. In early November 2014, Maldonado's attorney sent the Firm a proposed complaint, stating, *inter alia*, that Maldonado had not been paid for the time she spent working during the "work interview." Firm 56.1 Stmt. ¶¶ 9-10. On November 12, 2014, the Firm hand-delivered a check for $110.00 to Maldonado's attorney. Firm 56.1 Stmt. ¶ 11. In January 2015, Maldonado's attorney notified the Firm that the $110 check was deficient, but did not explain why, notwithstanding the Firm's statement that it wished to pay the full amount owed. Firm 56.1 Stmt. ¶ 13; Maldonado Aff. ¶ 24. On April 10, 2015, the Firm offered Maldonado's counsel a check for $220.00, which was refused and returned to the Firm. Firm 56.1 Stmt. ¶¶ 14-15; Maldonado Aff. ¶ 25. The Firm then transmitted the $220 check to Maldonado's attorney via Federal Express. Firm 56.1 Stmt. ¶ 16. Again, Maldonado's attorney rejected this check as insufficient. Firm 56.1 Stmt. ¶¶ 15-16; Maldonado Aff. ¶ 27.

## II.   Procedural History

On April 13, 2015, Maldonado filed a Complaint (the "Federal Action") against Bostany and the Firm (together the "Bostany Parties") alleging claims for unpaid wages under the FLSA and NYLL; gender-based discrimination, harassment and retaliation under the NYCHRL; and assault and battery claims under state common law. On the same day, the Firm filed a declaratory judgment action in New York State Supreme Court, New York County (the "State Action") seeking declarations: (1) that Bostany had paid Maldonado for her work interview, and (2) that the Firm had less than four employees and therefore was not covered by the NYCHRL.

On May 1, 2015, Maldonado removed the State Action to this Court, designating it as related to the Federal Action. On May 7, 2015, the Undersigned accepted the State Action as related to the Federal Action. Following a joint Initial Pretrial Conference in both cases, the Court stayed all discovery and adjourned the parties' answer deadlines pending resolution of the Jurisdiction Motion, the Summary Judgment Motion and the Fees Motion.

## DISCUSSION

### I. The Court Has Supplemental Jurisdiction over Maldonado's State Law Claims

"[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000). The permissible scope of the Court's supplemental jurisdiction is set out in 28 U.S.C. § 1367(a):

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

It is undisputed that Plaintiff's FLSA claims fall within the Court's original jurisdiction. Supplemental jurisdiction turns on whether those federal claims and Maldonado's NYLL, NYCHRL and state tort claims stem from the "same 'common nucleus of operative fact.'" *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). Put differently, the question at hand is whether the relationship between the federal and state claims is "such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Id*. (quoting *Gibbs*, 383 U.S. at 725). To make this determination, courts "have traditionally asked whether 'the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court." *Achtman v. Kirby,*

*McInerney & Squire LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (alterations in original) (quoting *Lyndonville Sav. Bank*, 211 F.3d at 704). Supplemental jurisdiction is lacking "when the federal and state claims rest[] on essentially unrelated facts." *Lyndonville Sav. Bank*, 211 F.3d at 704.

The Bostany Parties do not dispute that the Court has supplemental jurisdiction over Plaintiff's state wage claims brought under the NYLL, and there is no colorable argument to the contrary. *See Salim Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 243-50 (2d Cir. 2011) (NYLL and FLSA claims arise from a common nucleus of operative facts surrounding the compensation policies of the employer).

The Court's jurisdiction over Plaintiff's NYCHRL and state tort claims is less clear. As the Bostany Parties note, Maldonado's wage claims, which amount to a simple question of arithmetic, can be resolved independently of her non-wage state claims, which involve different interests and remedies. Firm's Mem. in Support of Summary Judgment ("S.J. Mem.") 4-5 (citing cases); s*ee also Thomas v. Eony LLC*, No. 13-CV-8512(JPO), 2015 WL 1809085, at *6-7 (S.D.N.Y. Apr. 21, 2015) (declining to exercise supplemental jurisdiction over sexual harassment, disability discrimination and tort claims that were insufficiently related to more straightforward wage and hour claims). For essentially the same reason, the Bostany Parties argue that Maldonado's state discrimination and tort claims predominate over her wage claims, and, therefore, it would be proper for the Court to decline to exercise jurisdiction over them. *See* 28 U.S.C. § 1367(c)(2) (district courts may decline to exercise supplemental jurisdiction over a non-federal claim that "substantially predominates over the claim or claims over which the district court has original jurisdiction"); *see also Deac v. Il Postino, Inc.*, No. 12-CV-5952(NGG), 2014 WL 4437311, at *10 (E.D.N.Y. Aug. 15, 2014), *report and recommendation adopted as modified*, No. 12-CV-5952(NGG)(RLM), 2014 WL 4437314 (E.D.N.Y. Sept. 8, 2014) (declining supplemental jurisdiction because "the non-wage state and local law claims

[would] require substantially more judicial resources to adjudicate, and [were] more salient in this case as a whole, than plaintiff's wage claims").

Notwithstanding the Bostany Parties' arguments to the contrary, supplemental jurisdiction is appropriate here. The entire scope of these cases revolves around a single three-hour work interview. As a matter of judicial efficiency and common sense, Maldonado's claims, which are based upon a discrete set of overlapping facts, should, to the extent possible, be litigated together. *See Achtman*, 464 F.3d at 335. Because the facts underlying Maldonado's federal and state claims substantially overlap such that she would "ordinarily be expected to try them all in one judicial proceeding," *Montefiore Med. Ctr.*, 642 F.3d at 322 (quoting *Gibbs*, 383 U.S. at 725), the Court finds that it is appropriate to exercise supplemental jurisdiction over Maldonado's state law claims, except as described in Section IV, *infra*.

## II.  Summary Judgment Is Warranted in the Firm's Declaratory Judgment Action

The Firm has moved for summary judgment on its declaratory judgment complaint pursuant to Rules 56 and 57 of the Federal Rules of Civil Procedure. In considering a motion for summary judgment in an action for declaratory relief, courts apply the same standard as is applicable to any other summary judgment motion. *Garanti Finansal Kiralama A.S. v. Aqua Marine and Trading Inc.*, 697 F.3d 59, 63-64 (2d Cir. 2012) (noting, with respect to declaratory judgment actions, that "[t]he incidents of pleading, process, discovery, trial, and judgment are the same" as in other civil actions (quoting 10B Charles Alan Wright, et al., *Federal Practice & Procedure* § 2768 (3d ed. 2012)).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A material fact is one that would 'affect the outcome of the suit under the governing law,' and a dispute about a

7

genuine issue of material fact occurs if the evidence is such that 'a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Thus, "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks omitted)).

"The moving party bears the burden of showing that he or she is entitled to summary judgment," *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004) (citing *Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994)), and courts must therefore "construe the evidence in the light most favorable to the non-moving party and . . . draw all reasonable inferences in [the non-movant's] favor." *Huminski*, 396 F.3d at 69 (quoting *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 166 (2d Cir. 2003)).  To overcome a motion for summary judgment, however, the non-movant may not rely on "conclusory allegations or unsubstantiated speculation," but instead must set forth affirmative evidence on which a reasonable fact-finder could decide in its favor. *Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392, 400 (S.D.N.Y. 2012) (citations omitted); *see also Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995) ("[M]ere conclusory allegations or denials in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." (internal quotations and citation omitted)).

### A. There Is No Factual Dispute as to Whether Bostany Paid Maldonado the Amount Due for Her Work Interview

The FLSA requires employers to promptly pay wages. *See* 29 U.S.C. § 206(a); *see also Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 353 (S.D.N.Y. 2014) ("it is clear that the FLSA requires wages to be paid in a timely fashion" (quoting *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 57 (2d Cir. 1998) (other citations omitted)). The NYLL also provides that clerical and "other workers shall be paid in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." N.Y. Lab. Law § 191(1)(d). After a worker's employment is terminated, the employer "must pay the wages not later than the regular pay day for the pay period during which the termination occurred." *Id.* § 191(3). Both the FLSA and NYLL also require violating employers to pay liquidated damages. In particular, the FLSA states that an employer who violates the statute "shall be liable to the employee . . . affected in the amount of [her] unpaid minimum wages . . . and in an additional equal amount as liquidated damages" along with reasonable attorneys' fees. 29 U.S.C. § 216(b).

On the date of her work interview, Maldonado worked from 11:00 a.m. until approximately 1:30 p.m., and then took a half-hour lunch break. She left the Firm around 2:00 p.m. after learning that Bostany had to leave for a client meeting. It is unclear from the parties' submissions whether the parties contemplated that Maldonado would be paid for her lunch break, *see* Bostany Decl. Ex. A, but even assuming they did, Maldonado should have been paid for 3 hours of work at rate of $20 per hour. Therefore, the Firm should have promptly paid Maldonado $60 for the work interview. Because the Firm did not offer to compensate Maldonado until November 12, 2014, several months after the work interview, its payment was

not timely.  Accounting for liquidated damages under the FLSA, Maldonado would have been entitled to $120.

The Firm has moved for summary judgment on its request for a declaration that the Firm has paid Maldonado the wages owed to her for the work interview.  Maldonado does not dispute that the $220 check offered to her by the Firm was more than sufficient to compensate her for unpaid wages plus liquidated damages under the FLSA and NYLL.[2]  Her only argument in response to the Firm's Summary Judgment Motion is that the check was insufficient because it did not include attorneys' fees.[3]  *See* Maldonado's Opp. to Firm's Mot. for Summary Judgment ("S.J. Opp.") 8-9.  In support of this position, Maldonado cites to a single FLSA case in which the court found that offers of payment were simply "settlement overture[s]" that did not render plaintiffs' underlying wage claims moot or subject to dismissal.  *Id.* (citing *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 173 (W.D.N.Y. 2007)).  Apart from being non-binding, the *Seever* case is readily distinguishable in that the proffered amounts in that case reflected the employer's "rough determination" of the amounts owed, and the court was therefore uncertain as to whether they represented "full compensation" for the employees' claims, damages, fees and costs.  *Seever*, 528 F. Supp. 2d at 172-73.  Here, in contrast, there is no ambiguity or uncertainty as to what Maldonado was owed for her work interview, and it is indisputable that the Firm attempted

---

[2]  Although Maldonado did not raise the issue, she may separately be entitled to liquidated damages under the NYLL.  While district courts in this Circuit are divided as to whether plaintiffs may recover liquidated damages under both the FLSA and NYLL, a majority have held that plaintiffs may recover under both laws because the liquidated damages provisions serve fundamentally different purposes.  *See, e.g.*, *Yu Y. Ho v. Sim Enters., Inc.*, No. 11-CV-2855(PKC), 2014 WL 1998237, at *18-19 (S.D.N.Y. May 14, 2014) (collecting cases).  But even if the Court were to grant Maldonado liquidated damages for the full amount of wages owed under the NYLL, *see* N.Y. Lab. Law §§ 198(1–a), 663(1), she would only be entitled to an extra $60 in damages, bringing the total amount owed to $180.  The $220 offered to her was more than sufficient to cover that amount.

[3]  Maldonado also suggests that the proffered payment may be insufficient because the Firm's FLSA violations were retaliatory and therefore "willful."  S.J. Opp. 8.  While willfulness is a relevant factor in determining the appropriate statute of limitations period, it has no relevance here because Maldonado only worked for a single day that indisputably falls within the standard statutory period.

to pay Maldonado more than that amount on multiple occasions. While Maldonado is entitled to attorneys' fees, that issue is addressed separately, *infra*. The Firm's Summary Judgment Motion is therefore granted with respect to its request for a declaratory judgment regarding Maldonado's compensation. The Court finds that the Firm has tendered payment for wages owed to Maldonado for the July 22, 2014 work interview. Maldonado's wage claims are therefore dismissed.

### B. There Is No Factual Dispute that the Firm Had Less than Four Employees at the Time of Maldonado's Work Interview

By its terms, the NYCHRL does not apply to "any employer with fewer than four persons in his or her employ." N.Y.C. Admin. Code § 8-102(5); *see also Echevarria v. Insight Med., P.C.*, 72 F. Supp. 3d 442, 456 (S.D.N.Y. 2014) (citing cases).[4] In his Declaration in support of the Firm's Summary Judgment Motion, Bostany avers that the Firm only had one employee from July 17, 2014 through July 22, 2014, when Maldonado was communicating with him about the position. Bostany Decl. ¶ 11. Bostany also attaches, as an exhibit to his Declaration, the Firm's quarterly tax returns for July, August, and September 2014, stating that the Firm employed only one employee during this period. Bostany Decl. Ex. E (Dkt. 12-5 at 3).

In opposing the Summary Judgment Motion, Maldonado argues that genuine issues of material fact exist as to the number of persons employed by the Firm based on (1) her own perceptions and understanding regarding the Firm's employees and (2) the Firm's website, which lists four individuals apart from Bostany as being employed by, or somehow affiliated with, the Firm. Mesidor Declaration in Support of Def.'s Opp. to Summary Judgement ("Mesidor Decl.") Ex. A (Dkt. 17-1). In particular, Maldonado asserts that, on the day of her work interview, she

---

[4] Under N.Y.C. Admin. Code § 8–102(1), "persons" is broadly defined to include "one or more natural persons, proprietorships, partnerships, associations, group associations, organizations, governmental bodies or agencies, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers."

was given a tour by an attorney, Dennison Marzocco, whom she believed to be employed by the Firm. Maldonado Aff. ¶¶ 9, 28. During her interview, she also claims that she was "made aware" that the Firm employed another attorney named Charen Kim, an unidentified "Of Counsel" attorney, and a paralegal, whose computer login Maldonado used during her work interview. *Id.* ¶ 28. Ira Stickler, a "Patent Attorney," and Harry Batchelder, who is described as being "Of Counsel," are listed on a copy of the Firm's website, which appears to have been printed out by Maldonado's attorney on or around May 26, 2015. Mesidor Decl. Ex. A.

In response, the Firm has submitted a Declaration from Stickler and an Affidavit from Megan Allen, the paralegal whose login credentials Maldonado used during her work interview. In his Declaration, Stickler avers that he signed a contract to do per diem legal work for the Firm on an "as needed basis" on July 23, 2014, and that he started working for the Firm on that basis on July 29, 2014. Stickler Decl. ¶¶ 2-3. Because Stickler was retained on a per diem basis after Maldonado's work interview concluded, he was not a person employed by the Firm at the time of her interview. In her Affidavit, Allen states that she "left the Firm's employ in the summer of 2013 to work full time," and that she "[has] not worked at the Firm since 2013." Allen Aff. ¶¶ 3-5. Because she was not employed at the Firm in July 2014, Allen is not a person employed by the Firm for purposes of Maldonado's NYCHRL claims.

The Firm does not dispute that Marzocco was employed by the Firm during Maldonado's work interview. Firm's Reply Mem. in Support of Summary Judgment 4. With respect to Charen Kim, the Firm admits that "Kim was a Member of the Firm," but fails to further explain her relationship to the Firm or why she should not be considered an employee. *Id.* Likewise, the Firm fails to provide any affidavit or other explanation regarding the Firm's relationship with Batchelder, who is listed on its website as being "Of Counsel." Nevertheless, resolving all facts and inferences in Maldonado's favor, the Court finds that even if Kim and Batchelder are

counted as persons employed by the Firm, those individuals, together with Marzocco, make up three employees, which is less than the required number to qualify for coverage under the NYCHRL. There is no issue of fact with respect to Stickler and Allen; Maldonado's speculation that those individuals were employed at the time of her interview cannot overcome their signed affidavits stating that they were not. *Matsushita*, 475 U.S. at 587 (an opponent to a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"). Because Maldonado has not set forth any facts or evidence suggesting that the Firm had more than three employees at the time of her interview, the Bostany Parties' Summary Judgment Motion on this issue is granted.[5] The Court finds that, from July 17, 2014 through July 22, 2014, the Firm employed less than four employees and, therefore, the NYCHRL is inapplicable to the Firm with respect to Maldonado's claims. *See* N.Y.C. Admin. Code § 8-102(5). Maldonado's NYCHRL claims are therefore dismissed.

### III.   Maldonado Is Only Entitled to Reasonable Attorneys' Fees

The Court is extremely troubled by Maldonado's request for $22,985 in attorneys' fees and $2,366.89 in costs for her litigation of these cases. It is beyond cavil that the FLSA and

---

[5] Maldonado argues that summary judgment is premature because she has not had an opportunity to take discovery. While it is true that summary judgment is very rarely granted prior to discovery, *see, e.g.*, *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (citations omitted), there are times when pre-discovery summary judgment is appropriate. In particular, when a party "fails to produce any specific facts," and merely "speculat[es] about what discovery might uncover," courts may grant summary judgment without discovery. *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 107 (2d Cir. 1981) (citations omitted). Here, Maldonado argues that she is entitled to discovery as to how many of the individuals listed on the Firm's website were employed by the Firm during her work interview. S.J. Opp. 4. She has not, however, given the Court any basis for challenging the affidavits submitted by Stickler and Allen, and the Court has resolved all questions about the other individuals in her favor. Rule 56 provides a mechanism for parties to obtain discovery prior to summary judgment upon showing "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Maldonado has not filed a Rule 56(d) motion or otherwise made any specific argument as to why she requires additional discovery. *See Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995) (party seeking pre-summary judgment discovery should submit an affidavit explaining: "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."). As a result, there is no basis for the Court to find that additional discovery is required.

NYLL require an employer to pay a meritorious plaintiff's attorneys' fees. 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). The statutes are clear, however that such fees must be "reasonable." *Id.* There is simply no way that $22,985 represents a reasonable fee for an FLSA/NYLL action stemming from $60 in unpaid wages. In so finding, the Court does not intend to trivialize the Firm's failure timely to pay Maldonado for her work interview. The Firm should have upheld its agreement to pay Maldonado for her time, and the Bostany Parties' suggestion that the onus was on Maldonado to "invoice" the Firm for her time is, at best, disingenuous. S.J. Mem. 2. Nonetheless, rather than filing a wage and hour action in federal court, a sensible attorney would have called or written the Firm to demand Maldonado's unpaid wages (which the Firm was more than happy to provide), and then litigated (or settled) Maldonado's NYCHRL and tort claims in state court. While Maldonado's counsel may not have known at the outset that the Firm was not a covered entity under the NYCHRL, counsel should have known that neither the FLSA nor NYLL makes any provision for attorneys' fees generated in litigating unrelated state law claims, and that, in the absence of another applicable fee-shifting framework, the Court cannot impose liability for those non-wage related fees on the Bostany Parties.

Maldonado's counsel represents that attorneys at her firm spent 65.10 hours prosecuting these cases at purported hourly rates ranging from $225 per hour to $500 per hour for a lodestar amount of $22,985. Mesidor Decl. in Support of Fees Motion ("Mesidor Fees Decl.") Ex. A (Dkt. 36-1). "While there is a strong presumption that the 'lodestar' amount—that is, the number of attorney hours reasonably expended times a reasonable hourly rate—represents a reasonable fee, the court may adjust the fee award upward or downward based on other considerations." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012) (citations omitted). With respect to hours billed, courts consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditure," *Grant v. Martinez*, 973

14

F.2d 96, 99 (2d Cir. 1992) (citation omitted), and therefore billing time that is "excessive, redundant, or otherwise unnecessary" should be excluded. *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). With respect to rates charged, the "court should apply the prevailing rate within the district for similar services by lawyers of comparable experience and skill." *Galeana v. Lemongrass on Broadway Corp.*, No. 10 CIV. 7270(GBD)(MHD), 2014 WL 1364493, at *13 (S.D.N.Y. Apr. 4, 2014) (citing *Gierlinger*, 160 F.3d at 882).

The problems with Maldonado's counsel's lodestar are manifold. With respect to hours, only a fraction of the billed attorney time is reasonably related to counsel's collection of unpaid wages, which the Firm was clearly eager to pay. Because the Firm offered Maldonado a $110 check on November 12, 2014, intending to compensate her for the entire work day, and stated that it wanted to make up any deficiency, no fees were reasonably incurred after that point. Bostany Decl. Ex. D (Dkt. 12-4). The Firm's willingness to cure any deficiency is evidenced by the Firm's follow-up email to Maldonado's counsel on January 12, 2015, inquiring whether there was any deficiency in the $110 check, *see* Declaration of Mercedes Colwin in Opp. to Pl.'s Mot. For Attorneys' Fees ("Colwin Decl.") Ex. G (Dkt. 13-2), and its unsolicited $220 check sent to Maldonado's counsel on April 10, 2015. Colwin Decl. Ex. H (Dkt. 13-3).

As the movant, Maldonado has the burden of justifying her fees, *see Hensley*, 461 U.S. at 437, and neither the FLSA nor NYLL provides any basis for awarding fees based on Maldonado counsel's decision to continue billing toward these actions while refusing to accept the Firm's payments and refusing to explain the basis for her assertion that the check was deficient. *See Chen v. Jin Holding Grp. Inc.*, No. 10 CIV. 0414(PAC), 2012 WL 279719, at *3 (S.D.N.Y. Jan. 31, 2012) ("Defendants should not be forced to pay inflated legal fees, where the inflation is attributable to the dogged pursuit of an unreasonable goal."). If Maldonado felt that she had not

been made whole because the proffered checks did not cover her attorneys' fees, a reasonable lawyer would have raised that issue immediately, when her attorneys' fees were comparatively *de minimis*, rather than continuing to rack up fees for work on unrelated claims expecting the Bostany Parties to foot the bill. *See Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation."). The Court therefore finds that Maldonado is only eligible for attorneys' fees billed by Mesidor and Welch prior to November 12, 2014, and only to the extent those fees are both reasonable and incurred in connection with activities related to Maldonado's wage claims.

If Maldonado's attorneys' contemporaneous records are accurate, Mesidor spent 5.3 hours on October 22, 2014 drafting a Complaint and another 1.1 hours editing the Complaint after a review by the client. Her associate, Welch, then spent 0.25 hours on November 3, 2014, drafting a letter to send to the Bostany firm.[6] The Complaint is 17 pages long and the vast majority of the allegations in the Complaint relate to Plaintiff's claims under the NYCHR and her state tort claims, not her claims under the FLSA and NYLL. A veteran lawyer with experience litigating FLSA and NYLL claims, which Mesidor represents she is, Mesidor Fees Decl. ¶¶ 3, 6, should be able to draft a basic FLSA and NYLL complaint asserting a failure to pay wages in an hour, inasmuch as the operative paragraphs of such a complaint are boilerplate. Thus, even assuming Maldonado's counsel believed a demand letter would be more powerful if it included a draft Complaint (a questionable strategic decision, but not an entirely unreasonable one), 1.25 hours were reasonably spent pursuing the FLSA and NYLL claims.

With respect to billing rates, Maldonado has not justified her proposed rates of $500 per hour for Mesidor and $225 per hour for Welch. Pl.'s Mem. of Law in Support of Fees Motion

---

[6] On November 5, 2014, a timekeeper with the initials "AN" spent 0.10 hours notifying the client that the letter had been spent. The time records reflect a billing rate of $0.00 for AN, so that time is not compensable.

("Fees Mem.") 6-8.  Mesidor has approximately 11 years of experience practicing law, but she has only worked as a wage and hour litigator since 2011.  *Id.* at 7.  The Court generally finds that experienced FLSA associates (rather than partners) are entitled to approximately $250 per hour, *see, e.g.*, Order at 4-5, *Li v. Oliver King*, 13-cv-7372 (S.D.N.Y. Nov. 6, 2015) (VEC), Dkt. 89 (citing cases), but because the Bostany Parties agreed that Mesidor is entitled to $300 per hour, *see* Mem. of Law in Opp. to Fees Motion 6, the Court will approve that rate.  Having reasonably billed 1.0 hour at a rate of $300 per hour, Mesidor is entitled to fees in the amount of $300.00.

Welch is a 2012 law school graduate who joined the Phillips & Associates firm in 2013.  Fees Mem. 8.  Because she is a relatively junior associate, the Court finds that $150 per hour is a reasonable rate for Welch's billable time.  *See, e.g.*, Order at 4-5, *Li v. Oliver King*, 13-cv-7372 (S.D.N.Y. Nov. 6, 2015) (VEC), Dkt. 89 (citing cases).  Having billed 0.25 hours at a rate of $150 per hour, Welch is entitled to fees in the amount of $37.50.  Combining Mesidor's and Welch's reasonable fees, the Court finds that the Bostany Parties are liable for attorneys' fees in the amount of $337.50.

Maldonado also seeks litigation costs in the amount of $2,366.89.  The Court agrees with the Bostany Parties that these costs must be reduced by $1200, representing the amount purportedly spent on the parties' mediation.  Because this mediation took place after November 12, 2014, costs spent in furtherance of the mediation were not reasonably related to Maldonado's wage claims, and therefore are not covered by the fee-shifting framework of FLSA and NYLL.  Because the Bostany Parties do not dispute the remaining costs, totaling $1,166.89, the Court finds that Maldonado is entitled to litigation costs in that amount.

### IV. Maldonado's Remaining State Tort Claims Are Dismissed Without Prejudice

Having resolved Maldonado's unpaid wage claims, granted in part her request for attorneys' fees, and dismissed her claims under the NYCHRL, all that remains are Maldonado's

assault and battery claims under New York law. While supplemental jurisdiction over these claims was appropriate alongside Maldonado's federal wage and hour claims, now that those claims have been resolved, there is little reason for the court to maintain jurisdiction. Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over non-federal claims where the court "has dismissed all claims over which it has original jurisdiction." The Second Circuit has held that while section 1367(c) is permissive, rather than mandatory, "where all the federal claims have been dismissed at a relatively early stage, the district court should decline to exercise supplemental jurisdiction over pendent state-law claims." *Astra Media Grp., LLC v. Clear Channel Taxi Media, LLC*, 414 F. App'x 334, 337 (2d Cir. 2011). Maldonado's state tort claims are therefore dismissed without prejudice to her ability to renew them in a state court of competent jurisdiction.

## CONCLUSION

For the foregoing reasons, Maldonado's Jurisdiction Motion is GRANTED with respect to her NYLL and NYCHRL claims, but DENIED with respect to her state tort claims, which are dismissed without prejudice.

The Firm's Summary Judgment Motion is GRANTED. The Court finds the Firm has tendered payment for wages owed to Maldonado for the July 22, 2014 work interview, but, for the avoidance of doubt, the parties are directed to void any previously issued checks in relation to this dispute, and the Firm is directed to reissue a check in the amount of $180 payable to Maldonado in resolution of her FLSA and NYLL claims and to issue any appropriate tax documents. The Court further finds that the Firm employed less than four employees during the relevant time period, and therefore the NYCHRL is inapplicable to the Firm with respect to Maldonado's claims. Maldonado's NYCHRL claims are accordingly dismissed with prejudice.

Maldonado's Fees Motion is GRANTED IN PART and DENIED IN PART.  The Court finds that Maldonado is entitled to an award of attorneys' fees in the amount of $337.50 and costs in the amount of $1,166.89 from the Bostany Parties, jointly and severally.

The Clerk of the Court is respectfully requested to enter judgment as set forth above, close all open Motions, and terminate the above-captioned cases.

**SO ORDERED.**

Date:  February 24, 2016
      New York, New York

*(signature)*
**VALERIE CAPRONI**
**United States District Judge**